UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MEGAN PETE, an individual,

*Plaintiff,*                                                    Civil Action No. 1:24-CV-24228-CMA

v.

MILAGRO ELIZABETH COOPER,
an individual,

*Defendant.*

_____

## ORDER OF CONTEMPT FOLLOWING DEPOSITION

**THIS MATTER** is before the Court upon Plaintiff's request that non-party witness Daystar Peterson and his lawyer, Crystal Morgan, be held in contempt of court for their conduct during a deposition held on November 14, 2025. The underlying facts involved in this dispute and the two previous attempts at taking Mr. Peterson's deposition in this matter are recounted in the Court's previous Order Denying Motion for Protective Order AND/OR To Quash Subpoena. [ECF No. 168]. The undersigned was personally present at both the second and this third attempt to depose Mr. Peterson.

As the Court in *In re Steffen* noted, the task of imposing sanctions on litigants and their attorneys is "one of the most distasteful tasks of any judge." 406 B.R. 139, 141 (M.D. Fla. 2009). "Notwithstanding when the time arrives when this Court must perform such a task, it is clearly executed to insure that the court's business is properly conducted, and to preserve the respect for the judicial system and for the court as a whole." *Id.* A court's power to use a citation of civil contempt to compel compliance with its directives comes both from its inherent authority, *see Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831 (1994) (noting courts "have

embraced an inherent contempt authority as a power necessary to the exercise of all others.") (citations and quotation marks omitted); *Popular Bank of Fla. v. Banco Popular de Puerto Rico*, 180 F.R.D. 461, 465 (S.D. Fla. 1998) ("The court's power to enforce compliance with its lawful orders is inherent."), and from the Federal Rules of Civil Procedure, *see* Fed. R. Civ. P. 45(g) (allowing a court to "hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.").[1] Here, for the reasons that follow, the undersigned finds Mr. Peterson and his attorney in contempt of court and must impose sanctions.

Because Mr. Peterson is incarcerated, taking his deposition required an order of the Court, pursuant to Federal Rule of Civil 30(a)(2)(B). Chief Judge Altonaga entered such an order in this case. [ECF No. 41]. Mr. Peterson's first-attempted deposition lasted approximately 44 minutes because Mr. Peterson behaved inappropriately and personally insulted the attorney taking the deposition. [ECF No. 65 at 3]. Mr. Peterson's then-lawyer, who at the time also represented Defendant Ms. Cooper in this matter, did not oppose sanctioning him for his conduct. [ECF Nos. 65-3 (Mr. Hayden: "Michael Hayden, counsel for defendant and appellant counsel for witness, Daystar Peterson."); 65-1 (noting Mr. Hayden did not object to a motion sanctioning Mr. Peterson's misconduct)].

Mr. Peterson was sanctioned by Chief Judge Altonaga and ordered to sit for a second deposition to be supervised by the undersigned magistrate judge. [ECF No. 104]. During the second-attempted deposition of Mr. Peterson, which I supervised, Mr. Peterson questioned what the consequences for failing to comply with his deposition obligations would be. I informed him

---

[1] 28 U.S.C. § 636(e)(2) authorizes a magistrate judge "to punish summarily by fine or imprisonment, or both, such contempt of the authority of such magistrate judge constituting misbehavior of any person in the magistrate judge's presence so as to obstruct the administration of justice."

2

sanctions could range from monetary fines through days in prison under the Court's contempt authority. Mr. Peterson responded that he "got jail for 10 years right now. You can do whatever you'd like to do." He also indicated that he was not concerned with monetary sanctions.

Mr. Peterson sought a motion for protective order in California, where he is incarcerated, to bar the deposition from taking place arguing that his criminal conviction was on appeal and raised concerns that he could be asked questions regarding his criminal case. The California federal court in which Mr. Peterson's motion for protective order was filed held a hearing on the matter and denied the Motion. The Court also transferred the issue back to this district for further proceedings. After a full hearing on the matter, the undersigned denied the motion for protective order and ordered Mr. Peterson to sit for a third-continued deposition. *See* [ECF No. 168].

The third-continued deposition occurred on November 14, 2025. Before starting, Mr. Peterson again asked what the sanction for not answering questions would be. When told his behavior could result in contempt of court and sanctions consisting of fines and additional jail time, Mr. Peterson then said "whatever the fines are, I'll pay them. I'm a millionaire. I don't care." D. Peterson Depo. Tr. Vol. III 122:7–8. Mr. Peterson also told Plaintiff's counsel to "calm down" and "relax." D. Peterson Depo. Tr. Vol. III 182:3–4. Mr. Peterson then called Plaintiff's counsel a "liar." D. Peterson Depo. Tr. Vol. III 183:11. Plaintiff's attorney was unable to ask more than two questions before Mr. Peterson stormed out of the room and sought to end the deposition stating that he had not been shown in advance all the exhibits Plaintiff's counsel intended to use during the deposition. After some time and discussion with his lawyer, Mr. Peterson returned to the room. After the third question, Mr. Peterson got upset and told Plaintiff's counsel that she "came in here hot" and "failed." D. Peterson Depo. Tr. Vol. III 139:17–19. Contrary to Mr. Peterson's accusation, Plaintiff's counsel maintained her composure at all times. Mr. Peterson then again abruptly exited,

this time making derogatory comments. Specifically, while exiting, Mr. Peterson lodged multiple expletives towards Plaintiff's lawyer. D. Peterson Depo. Tr. Vol. III 187:10–11. He then refused to return to the deposition.

Mr. Peterson's counsel also obstructed the deposition. Ms. Morgan, an attorney, can be sanctioned for failing to comply with the requirements of Rule 30 and failing to uphold professional standards. *See* Fed. R. Civ. P. 30(d)(2); *see also Davey v. Baptist Health Care Corp.*, No. 3:06CV31/RV/EMT, 2007 WL 9735104, at *2 (N.D. Fla. Feb. 9, 2007). Throughout the attempted deposition, Ms. Morgan objected to the relevance of questions regarding communications between Mr. Peterson and the Defendant, questions that were clearly relevant to the proceeding. She engaged in lengthy speaking objections coaching the witness and continued to do so after she was requested to stop. Even after her objections were ruled upon, she did not once instruct her client to answer Plaintiff's questions. She in fact complained that she had difficulty reaching Mr. Peterson and could not meet with him in person to prepare him for his deposition because he was in prison. Yet, both the stenographer and a representative from Plaintiff's attorney's law firm were present in the room with Mr. Peterson during the deposition. Plaintiff's representative, in fact, showed Mr. Peterson Plaintiff's deposition exhibits. Further, with respect to Plaintiff's deposition exhibits, Ms. Morgan complained she had not received them, despite having received them by email from Plaintiff's counsel. Her conduct served to reinforce and sought to excuse Mr. Peterson's contentious behavior rather than ensure compliance with court orders. *See Horton v. Maersk Line, Ltd.*, 294 F.R.D. 690, 698–99 (S.D. Ga. 2013) (sanctioning attorney and imposing restrictions on re-deposition of third party where attorney's questioning crossed the line into "improper" abusive advocacy); *Landers v. Kevin Gros Offshore, L.L.C.*, 2009 WL 2046587 at *1 (E.D. La. July 13, 2009) (quotes omitted) (imposing sanctions after witness

4

had been unsuccessfully deposed three times; counsel "interrupted the witness and would not let him complete his answer and provide his explanation. His tone of voice can best be described as yelling. Many of his questions were improper."); *Hilton v. Brooks Cnty. Sch. Dist.*, No. 7:20-CV-227 (HL), 2022 WL 4657701, at *4 (M.D. Ga. Sept. 30, 2022) (imposing sanctions on attorney for coaching witness and impeding deposition).

The three questions Plaintiff's counsel asked during the deposition were (1) How he first came to know Defendant Cooper; (2) Whether Mr. Peterson communicated with Defendant Cooper; and (3) Whether he sent Ms. Cooper Instagram direct messages or text messages.

During the deposition Plaintiff moved for an adverse inference based on Mr. Peterson's refusal to answer these three questions. Namely, she requested that the jury be instructed at trial that Mr. Peterson's answer to these three questions would have been favorable to Plaintiff and, therefore, unfavorable to Defendant Cooper. The undersigned initially denied this motion as the inference requested would necessarily alter the rights of Defendant Cooper, who was not involved in the instant deposition. Although not addressed yet by the Eleventh Circuit, other courts have allowed the finding of an adverse inference against a party based on a non-party witness' invocation of the Fifth Amendment privilege during a deposition, based on a close relationship between the party and the witness. *See NBank, Nat'l Ass'n v. Radian Servs. LLC*, No. 2:03-CV-109-WCO, 2005 WL 8156167, at *1 (N.D. Ga. Aug. 31, 2005); *Lighthouse List Co., LLC v. Cross Hatch Ventures Corp.*, No. 13-60524-CIV, 2014 WL 11531800, at *9 (S.D. Fla. June 12, 2014), *report and recommendation approved in part*, No. 13-60524-CIV, 2014 WL 11531638 (S.D. Fla. July 15, 2014). To draw an adverse inference based on a non-party witness' invocation of the Fifth Amendment, the court must evaluate the following factors: (1) the nature of the relevant relationships; (2) the degree of control of the party over the non-party witness; (3) the

compatibility of the interests of the party and the non-party witness in the outcome of the litigation; and (4) the role of the non-party witness in the litigation. *See NBank, Nat'l Ass'n*, 2005 WL 8156167, at *1.

Whether Mr. Peterson actually invoked his Fifth Amendment privilege or not, the undersigned finds the factors found in *NBank, Nat'l Ass'n*, to be relevant to the instant inquiry. While the first, third, and fourth factors weigh heavily in favor of granting an adverse inference, the second factor, Defendant Cooper's control over Mr. Peterson, is not so well defined. Indeed, *Nbank* and *Lighthouse List, Co., LLC* involve situations where the non-party was a direct employee of the party to the litigation, and where control was more explicitly defined. *NBank, Nat'l Ass'n*, 2005 WL 8156167, at *1; *Lighthouse List Co., LLC*, 2014 WL 11531800, at *9. Nevertheless, because Plaintiff alleges that Defendant acted as a *de facto* agent of Mr. Peterson and/or his team when making defamatory statements and undertaking tortious conduct, Mr. Peterson has a large role in this litigation. *See generally* [ECF No. 37]. Therefore, some form of inference or jury instruction based on Mr. Peterson's refusal to answer relevant deposition questions may be appropriate. *See NBank, Nat'l Ass'n*, 2005 WL 8156167, at *1; *Lighthouse List Co., LLC*, 2014 WL 11531800, at *9.

Further, Mr. Peterson's, and his attorney's, conduct justify sanctions, and Plaintiff was prejudiced by their joint obstructive conduct during the deposition. Based on Mr. Peterson's refusal to testify, the Court finds witness Daystar Peterson and his attorney Crystal Morgan in contempt of court on the following bases:

    a. Mr. Peterson's refusal to respond to the question of how he came to learn of or met Defendant Cooper;

      b. Mr. Peterson's refusal to answer whether he has ever communicated with Ms. Cooper;

      c. Mr. Peterson's refusal to acknowledge purported communications with Ms. Cooper on Instagram and via text message; and

      d. Mr. Peterson's refusal to sit for deposition, including after being shown the entire exhibit binder that Ms. Pete's attorney intended to question him about.

As a result of Mr. Peterson's deliberate evasion during three attempted depositions, and his attorney's coordinated scheme with him to object, obstruct, coach, and deny the opportunity for questioning at his third deposition, both Mr. Peterson and his attorney are hereby held in contempt of court.

**THEREFORE**, for the foregoing reasons and the reasons stated on the record, witness **DAYSTAR PETERSON** and his **ATTORNEY CRYSTAL MORGAN** are held in **CONTEMPT OF COURT**. Mr. Peterson shall pay to Plaintiff's counsel the amount of $20,000 as a fine for his obstruction of Plaintiff's multiple attempts to depose him and Attorney Morgan shall pay Plaintiff's counsel the amount of $5,000 for her part in the obstruction and her failure to uphold professional standards. Furthermore, the undersigned **RECOMMENDS** that the jury may be instructed that Mr. Peterson was properly asked the three questions listed above, but refused to answer and ultimately terminated the deposition without answering any questions.

_____
Lisette M. Reid
United States Magistrate Judge

cc:     Chief District Judge Cecilia M. Altonaga
         All Counsel of Record.